## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDREA C.,[1]

        Plaintiff,

  v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

        Defendant.

Case No. 1:23-cv-2301-MJS

## <u>MEMORANDUM OPINION</u>

Plaintiff Andrea C. ("Ms. C") challenges a final decision from the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income ("SSI") benefits based on her mental impairments. Ms. C seeks reversal based on a single alleged flaw in the Administrative Law Judge's ("ALJ") decision: the failure to expressly address whether she is disabled under a particular "Listing" in the Commissioner's regulations—Listing 12.05B. Because the Court agrees with the Commissioner that this error was harmless when viewed against the entirety of the ALJ's analysis, it **DENIES** Ms. C's motion for judgment of reversal (ECF No. 11) and **GRANTS** the Commissioner's motion for judgment of affirmance (ECF No. 14).

---

[1] Plaintiff's name has been partially redacted in keeping with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Privacy Concern Regarding Social Security and Immigration Opinions 3 (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (encouraging the use of "only the first name and last initial" in Social Security cases).

[2] Effective May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration, so he is automatically substituted as the defendant under Fed. R. Civ. P. 25(d).

## BACKGROUND

### I.    Factual Overview

Ms. C was 21 years old when she applied for benefits on January 5, 2021. (ECF No. 7, Administrative Record ("AR") at 20, 166.)[3] Ms. C's application presented her bipolar disorder and learning disability as disabling, claiming that her disability began on January 1, 2020. (*Id.* at 166, 184.) Based on the record, Ms. C has an eleventh-grade education. (*Id.* at 60.) She also has some limited experience working for a staffing company and security service. (*Id.* at 175.)

### II.    The ALJ Decision

To qualify for SSI benefits, a claimant must demonstrate a disability that renders her "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(a)(1), 1382c(a)(3)(A).

The Social Security Act implements these statutory standards through a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920. Through that five-step process, an ALJ evaluates whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) could return to their "past relevant work"; and (5) if not, could perform any "other work" in the national economy. *See, e.g.*, *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (describing each step). At the first four steps, the claimant bears the burden of proof. *Id.* But then, at step five, the burden shifts to the Commissioner to demonstrate that a claimant can perform

---

[3] Page citations to the AR refer to the running pagination at the lower right margin. Page citations to the parties' briefing, by contrast, refer to the ones assigned by the Court's electronic filing system.

"other work" available in the national economy, "based on a consideration of her 'residual functional capacity' (RFC), age, education and past work experience." *Id.*

The ALJ employed this five-step sequential process here. (AR at 20–31.) At step one, the ALJ found that Ms. C had not engaged in substantial gainful activity since the application date. (*Id.* at 22.) At step two, the ALJ found that Ms. C had severe impairments—namely, "mental impairments variously diagnosed as bipolar II disorder, mood disorder, major depressive disorder, intellectual disorder, and attention deficit hyperactivity disorder (ADHD)"—that significantly limit her ability to perform basic work activities. (*Id.*) At step three, the ALJ determined that Ms. C did not have an impairment that meets or medically equals the enumerated criteria of the applicable regulatory listings, meaning only that Ms. C was not automatically deemed eligible for benefits based on such a showing. (*Id.*) More specifically, the ALJ expressly considered—and rejected—the prospect that Ms. C was disabled under Listing 12.02 (neurocognitive disorders) and Listing 12.04 (depressive, bipolar and related disorders). But the ALJ did not mention or expressly analyze Listing 12.05 (intellectual disorder).

Leading into step four, the ALJ assessed Ms. C's residual functional capacity or "RFC," *see* 20 C.F.R. § 416.920(e), which captures the most "an individual can do despite his or her limitations," S.S.R. 96–8p, 1996 WL 374184, at *1. The ALJ found Ms. C had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations":

> can perform a full range of all physical work, up to and including very heavy work, provided such work does not require performing more than simple 1 to 4-step, routine, and repetitive tasks in a low stress work environment, defined as requiring only occasional decisionmaking and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors and no contact with the general public, and which would not require fast pace or production quotas such as would customarily be found on an assembly line.

(AR at 24–25.)[4] Then, at step four, the ALJ determined that Ms. C had no past relevant work. (*Id.* at 29.) And finally, at step five—in reliance on the vocational expert, and based on Ms. C's RFC and her age, education, and work experience—the ALJ concluded that Ms. C could, in fact, perform jobs that exist in significant numbers in the national economy. (*Id.* at 30.)

All told, the ALJ determined Ms. C was not "disabled" under the Act. (AR at 30–31.)

## III. Procedural History

Ms. C's application was denied at both the initial and reconsideration levels. (AR at 58, 65.) During the administrative hearing on February 23, 2022, Ms. C appeared with counsel, and the ALJ received testimony from Ms. C and a vocational expert. (*See id.* at 37–57.) On March 11, 2022, the ALJ issued a decision finding Ms. C not disabled. (*Id.* at 20–31.) On November 30, 2022, the Appeals Council denied Ms. C's request for review, making the ALJ's decision final. (*Id.* at 1.)

Pursuant to 42 U.S.C. § 405(g), Ms. C timely sought judicial review, asking this Court to reverse the ALJ's decision and remand to the Commissioner for reconsideration. (*See* ECF No. 11; ECF No. 11-1 ("Pl.'s Br."); ECF No. 16 ("Pl.'s Reply").) The Commissioner filed a cross-motion for affirmance. (*See* ECF No. 14 ("Def.'s Br.").) This ruling now follows.

## LEGAL STANDARD

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence and free of legal error. *Butler*, 353 F.3d at 999. This review is limited to determining whether the ALJ's decision adequately discusses the salient issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

---

[4] In Social Security Act parlance, "very heavy work" means "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 416.967(e).

*Berryhill*, 587 U.S. 97, 103 (2019) (citations and quotation marks omitted); *see also Butler*, 353 F.3d at 999 (substantial evidence is "more than a scintilla, but … less than a preponderance").

The Court must "carefully scrutinize" the record for substantial evidence, but it may not reweigh the evidence considered, *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32 (D.D.C. 2014) (quotation marks omitted), as judicial review is "highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). In other words, the issue before the Court is not whether Ms. C is disabled, but rather whether the ALJ's conclusion that she is not disabled is supported by substantial evidence and free of legal error. That said, the ALJ must build an "'accurate and logical bridge' from the evidence to [their] conclusion" so the Court can assess whether a connection exists between the record evidence and the ALJ's conclusions. *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

In applying these standards, the Court "must also be mindful of the harmless-error rule." *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021). In other words, even if the Court "perceive[s] error," it will "affirm the Commissioner's decision unless the error is prejudicial." *Id.*

## DISCUSSION

Ms. C challenges only one discrete aspect of the ALJ's decision: the absence of an analysis at step three of whether she is disabled under Listing 12.05B. The Commissioner acknowledges that absence but argues that any resulting error was harmless. As the Commissioner tells it, the ALJ's substantive analysis in rejecting any disability findings under Listings 12.02 and 12.04 necessarily extends to any possible finding under Listing 12.05 because all three Listings require the exact same showing on the exact same "mental functioning" criteria. And because the ALJ

found those criteria unmet for purposes of Listings 12.02 and 12.04, the same findings would straightforwardly hold true for purposes of Listing 12.05. The Court agrees.

Start with an overview of the "Listings" and their purpose. The Listings are catalogued in an appendix to the Commissioner's regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and are "designed to operate as a presumption of disability that makes further inquiry unnecessary," *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Cox v. Kijakazi*, 77 F.4th 983, 986 (D.C. Cir. 2023) ("If the claimant has met the first two steps and her disability is on that list, she is deemed disabled and qualifies for benefits, with no further inquiry."). In other words, "if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan*, 493 U.S. at 532. To satisfy a Listing, a claimant must show they "meet *all* of the specified medical criteria," meaning "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original).

Relevant here, Listing 12.05 covers "intellectual disorder." But the ALJ's decision did not mention Listing 12.05, even though the ALJ concluded at step two that Ms. C had "mental impairments variously diagnosed," including as an "intellectual disorder." (Pl.'s Br. at 11; *see* AR at 22.) Instead, the ALJ addressed only Listings 12.02 (covering "neurocognitive disorders") and 12.04 (covering "depressive, bipolar, and related disorders"). Ms. C insists this omission was erroneous and argues that the ALJ should have evaluated her impairment(s) against the criteria set forth in Listing 12.05B. Those criteria are as follows:

1. Significantly subaverage general intellectual functioning evidenced by a or b:
   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
   b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

> 2.    Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>   a.    Understand, remember, or apply information (see 12.00E1); or
>   b.    Interact with others (see 12.00E2); or
>   c.    Concentrate, persist, or maintain pace (see 12.00E3); or
>   d.    Adapt or manage oneself (see 12.00E4); and
>
> 3.    The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B.[5]

The Court is hard-pressed to understand why the ALJ did not mention or analyze Listing 12.05. After all, in the two sentences immediately preceding the ALJ's step-three analysis, the ALJ wrote that Ms. C "has the following severe impairments: mental impairments variously diagnosed as bipolar II disorder, mood disorder, major depressive disorder, *intellectual disorder*, and attention deficit hyperactivity disorder (ADHD)," which the ALJ determined "significantly limit the ability to perform basic work activities." (AR at 22 (emphasis added).) But then, at step three, the ALJ only addressed Listings 12.02 and 12.04, which correlate to most of the other diagnoses the ALJ had just identified, and overlooked Listing 12.05, which correlates to "intellectual disorder." The Court agrees this was error. But the Court does not agree that it was harmful error.

This is so because, as the Commissioner correctly argues (*see* Def.'s Br. at 16), Listing 12.05B shares with Listings 12.02 and 12.04 the common requirement of the so-called "paragraph B" criteria: that Ms. C prove she had mental impairments that resulted in either one extreme

---

[5] Listing 12.05A provides an alternative—and even more restrictive—set of criteria that can be satisfied: "[1] Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and [2] Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and [3] The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05A. Ms. C does not argue that the ALJ erred in failing to apply that variation, so the Court does not address it.

limitation, or two marked limitations in a broad area of mental functioning. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02B, *and* § 12.04B, *with* § 12.05B (all requiring "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning[,]" including the ability to (a) "[u]nderstand, remember, or apply information"; (b) "[i]nteract with others"; (c) "[c]oncentrate, persist, or maintain pace"; and (d) "[a]dapt or manage oneself)."). And the ALJ, in analyzing Listings 12.02 and 12.04, made findings on those criteria that are squarely incompatible with any potential finding that Ms. C would meet or equal the requirements of Listing 12.05B.

More specifically, the ALJ concluded that Ms. C exhibited "moderate" limitations across all four categories of mental functioning. As to understanding, remembering, or applying information, the ALJ recognized that Ms. C indicated "she has a diminished memory," but the ALJ balanced that against Ms. C's confirmation that she can perform a variety of normal life activities, including "preparing some foods," "doing light cleaning," "shopping in stores," "us[ing] a smartphone daily," and "perform[ing] some childcare." (AR at 23.) As to interacting with others, the ALJ acknowledged that Ms. C did not "discuss engaging in much social activity" but considered that point alongside her ability "to go outside alone, spend time with her child, maintain a relationship with her mother, and live with her child and the father of her child." (*Id.*) As to concentrating, persisting, or maintaining pace, the ALJ noted Ms. C's statement that she can have "problems concentrating" but considered, too, that she "reported having sufficient concentration and persistence" for the same normal life activities mentioned above. (*Id.*) And finally, as to adapting and managing oneself, the ALJ took note of Ms. C's reported symptoms of "depression," "mood fluctuation," and "struggles following through with tasks," but the ALJ weighed those points against Ms. C's ability to dress and bath herself and to engage in the same sorts of normal life activities described. (*See id.* at 23–24.) Moreover, and more broadly, the ALJ credited the

assessment of the State agency psychologist, Dr. Heiser, who found Ms. C exhibited "moderate" limitations across the board. (*See id.*) Ultimately, the ALJ wrapped up this part of discussion as follows: "Because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (*Id.* at 24.)

Because the ALJ would consider these exact same criteria in assessing Listing 12.05B, the ALJ's findings foreclose any prospect that Ms. C would satisfy Listing 12.05B. To take an analogy, consider a job applicant who applied for three different positions (Jobs 1, 2, and 3) with the same company; despite differences across the positions, all three shared the uniform prerequisites that an applicant have an advanced degree and at least five years of work experience in the industry. The hypothetical applicant soon learns that the company rejected them from Jobs 1 and 2 because they did not have an advanced degree and only possessed two years of relevant work experience— reasons that the company explained. But the applicant never hears back about Job 3. While it would have been prudent for the company to close the loop on all three positions, there is no reason for the applicant to be left wondering about whether they might still get that gig. After all, the very same disqualifying criteria for Jobs 1 and 2 are incompatible with the applicant's prospects for Job 3. A similar takeaway applies here: the ALJ's rationale for rejecting a finding of disability under Listings 12.02 and 12.04 necessarily preclude a finding of disability under Listing 12.05. The ALJ's failure to expressly mention or analyze Listing 12.05 was therefore harmless.

Other district courts presented with this exact scenario—*i.e.*, where an ALJ rejected a claimant's eligibility under Listings 12.02 and 12.04 for failure to satisfy the "paragraph B" criteria but neglected to squarely consider the applicability of Listing 12.05B—have ruled that the missing 12.05 analysis was harmless error. *See, e.g.*, *Tammy T. v. Kijakazi*, 2022 WL 71995, at *16 (D. Vt. Jan. 7, 2022) ("Because the ALJ analyzed the four areas of function within Listing 12.05B in her

evaluation of the other mental health listings, and those listings include the same criteria as requirement 2 of Listing 12.05B, [the] ALJ['s] failure to consider Listing 12.05B is harmless error."); *Brown v. Comm'r of Soc. Sec.*, 2020 WL 2899497, at *3 (D.N.J. June 2, 2020) (same where ALJ addressed "paragraph B" factors in conjunction with Listings 12.02, 12.04, and 12.06: "Plaintiff argue[s] that the ALJ erred by failing to consider Listing 12.05B, but Plaintiff overlook[s] the fact that the ALJ made unchallenged determinations that preclude finding that Listing 12.05B was satisfied"); *Pompey v. Saul*, 2019 WL 5225644, at *4–5 (M.D. Ala. Oct. 16, 2019) ("[T]he ALJ made findings in evaluating Listings 12.02B and 12.04B that are incompatible with a finding that Plaintiff meets or equals Listing 12.05B."). This Court agrees.

In resisting this outcome, Ms. C relies on *Brown v. Kijakazi*, 2022 WL 16571197 (D.D.C. Nov. 1, 2022). *In Brown*, an ALJ considered a variety of Listings (including 12.02 and 12.04) but not Listing 12.05, and Judge Faruqui remanded to the Commissioner for further proceedings. *Brown* is not helpful here. Unlike in this case, all parties in *Brown* consented to a remand. *See id.* at *1. So, *Brown* never "found remand necessary," as Ms. C argues (*see* Pl.'s Reply at 1); the court instead granted the parties' mutual requests for remand. The court in *Brown* certainly never considered the harmless-error arguments pressed by the Commissioner here. Beyond that, to the extent that *Brown* could be read to support Ms. C's argument despite these points, this Court takes a different view for the reasons explained, consistent with the other caselaw just discussed.[6]

In short, while the ALJ did not explicitly reject the applicability of Listing 12.05B, this conclusion necessarily follows from the broader analysis in the decision. Courts must consider ALJ decisions holistically. *Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993); *see Wonzell*

---

[6] In fact, *Brown* made a point to highlight that the ALJ "appropriately concluded that [the claimant] ha[d] a 'moderate limitation' for all other Listings he considered related to Plaintiff's mental impairments," including Listing 12.02 and 12.04. *Brown*, 2022 WL 16571197, at *5 n.4. This suggests that *Brown* was skeptical that the ALJ would reach any contrary determination for purposes of Listing 12.05B on remand.

*C. v. O'Malley*, 2024 WL 3738819, at *16 (D.D.C. May 8, 2024) ("An ALJ is not required to reiterate his appraisal of the evidence in making a conclusion if the basis for that conclusion is identifiable elsewhere in his opinion.") (collecting cases), *report and recommendation adopted*, 2024 WL 3288070 (D.D.C. July 3, 2024). And here, the ALJ's developed analysis and rejection of the "paragraph B" criteria in analyzing Listings 12.02 and 12.04 provide a clear basis for the implicit—but unstated—finding that Listing 12.05B was inapplicable, too. (AR at 24.)

## CONCLUSION

The ALJ's failure to invoke or expressly analyze Listing 12.05B was harmless error. And because Ms. C does not identify any other error in the ALJ's decision, the Court finds no basis to reverse the Commissioner's decision or remand for further proceedings.

The Court therefore **DENIES** Ms. C's motion for judgment of reversal (ECF No. 11) and **GRANTS** the Commissioner's motion for judgment of affirmance (ECF No. 14). The Court will issue a separate order so stating.

Dated: September 22, 2025

_____
MATTHEW J. SHARBAUGH
United States Magistrate Judge